**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

CHANDA SMITH, through her guardian ad litem ELIZA THOMPSON, individually and on behalf of all other persons similarly situated,

Plaintiffs,

v.

LOS ANGELES UNIFIED SCHOOL DISTRICT, a California public entity; SID THOMPSON, in his official capacity of the Los Angeles Unified School District,

Defendants.

CV 93-7044 RSWL (GHKx)

**Order re: Motion to Intervene [285] and Motion to Intervene and For Order to Show Cause [300]**

Currently before the Court are two Motions to Intervene [285, 300] by two groups of proposed intervenors (the “April Munoz Proposed Intervenors” or “AMPI” and the Mina Lee Proposed Intervenors” or “MLPI”) filed October 15, 2013 and October 23, 2013, respectively. Plaintiffs filed their Opposition to the Motions on November 19, 2013 [316]. Defendant Los

Angeles Unified School District ("LAUSD") filed its Opposition on November 19, 2013 [327]. The MLPI filed a Reply on November 26, 2013 [333] and the AMPI did so on December 5, 2013 [346]. This matter was taken under submission on December 5, 2013 [345]. Having reviewed all papers submitted pertaining to the Motion, and having considered all arguments presented to the Court, the Court **NOW FINDS AND RULES AS FOLLOWS:**

Proposed Intervenors' Motions to Intervene are **DENIED**.

## I. Background

This Action stems from a lawsuit filed in 1993 on behalf of students enrolled in the LAUSD who alleged that the LAUSD failed to comply with the special education mandates prescribed by IDEA and state education laws. See Dkt. # 1. The LAUSD and Plaintiffs (the "Parties") ultimately negotiated a settlement, which this Court entered as a Consent Decree on April 25, 1996. Dkt. # 84. The Parties agreed to develop a series of plans to improve the District special education program. Blakemore Decl. ¶ 2.

Implementation of the Consent Decree continued for five years, but in 2001, the LAUSD sought to modify the Consent Decree. Id. at ¶ 9; Myers Decl. ¶¶ 8-10. Ultimately, the Parties agreed to the Modified Consent Decree ("MCD"), which the Court entered on May 15, 2003. See Dkts. ## 265-266. The MCD appointed an

Independent Monitor to, *inter alia*, oversee the MCD's implementation, refine and modify outcomes, evaluate the LAUSD's progress in achieving the outcomes, and develop new data measures to gauge progress. See Dkt. # 266, ¶¶ 9-20, 30-68, 83-85, 87-88. The Independent Monitor is also tasked with presenting an Annual Report to the Superintendent and Board of Education concerning the progress and effectiveness of the implementation of the MCD. Id. at ¶ 83. The MCD also provides for a "Parents' Council," which was given a strong role in monitoring and implementing the MCD. See id. at ¶¶ 21-29. Additionally, the MCD set forth 17 measurable "Outcomes" for the LAUSD to meet by June 30, 2006. Id. at ¶¶ 35-65.

Outcome 7 is particularly relevant to these Motions. As originally written, that provision read:

> Outcome No. 7: Placement of Students with Disabilities (ages 6-22) with all Other Eligibilities. By June 30, 2006, the District will demonstrate a ratio of not less than 52% of students placed in the combined categories of 0-20% and 21-60% and not more than 48% students placed in the 61-100% category according to federal placement reporting requirements. In determining whether the District has achieved this outcome, any fractional percentage of .51 or above shall be rounded up to its nearest whole number.

Dkt. # 266 ¶ 44.

In 2008, the Parties negotiated a modification of Outcome 7, which was facilitated and approved by the Independent Monitor. See Cox Decl. ¶¶ 7, 8; Hehir Decl. ¶ 20; Blakemore Decl. ¶ 21; Weintraub Decl. ¶ 8. The Parties sought to negotiate this modification because the LAUSD's performance continued to fall below the Outcome 7 targets. Cox Decl. ¶ 7; Hehir Decl. ¶¶ 20, 22; Blakemore Decl. ¶ 21; see also Weintraub Decl. ¶ 7. The revised version of Outcome 7 was composed of two parts: Outcome 7A and Outcome 7B. Cox Decl. ¶ 9, Exs. D-E; Hehir Decl. ¶ 20; Blakemore Decl. ¶ 21; Weintraub Decl. ¶ 9. Outcome 7A required that at least 51% of students (ages 6-18) with disabilities other than speech language impairments, learning disabilities, or other health impairments, be placed in general education classrooms for at least 60% or more of the instructional day. Cox Decl. ¶ 9, Ex. E; Hehir Decl. ¶ 20; Blakemore Decl. ¶ 21; Weintraub Decl. ¶ 9. Outcome 7B required that at least 23% of students (ages 6-18) with multiple disabilities orthopedic ("MDO") be placed in general education classrooms for at least 40% or more of the instructional day. Id. The terms of this stipulated agreement were set forth in the Independent Monitor's October 1, 2008 Annual Report Part I. Cox Decl. ¶ 8, Ex. D.

Unfortunately, implementation of Outcome 7 remained problematic. See Weintraub Decl. ¶ 11; Hehir Decl. ¶¶

22-23; Blakemore Decl. ¶ 23; Myers Decl. ¶¶ 16-18. As a result, starting in October 2011, the Parties and the Independent Monitor again met to discuss changes to Outcome 7. Weintraub Decl. ¶ 13; Myers Decl. ¶ 18; Blakemore Decl. ¶ 23; Cox Decl. ¶ 12. With the assistance of Dr. David Rostetter, an authority on Least Restrictive Environment ("LRE") issues, the Parties and the Independent Monitor formulated and agreed to another modified version of Outcome 7 in October 2012. Weintraub Decl. ¶ 13; Cox Decl. ¶ 13-15; Myers Decl. ¶ 22; Blakemore Decl. ¶¶ 24-25.

The Parties' stipulated agreement to replace Outcomes 7A and 7B ("Revised Outcome 7") again had two parts. Revised Outcome 7.1 requires the LAUSD to "[r]educe the number of students with moderate to severe disabilities ages 6-18 at special education centers[1] by a total of 33% over three years, beginning with the 2012-2013 school year." Cox Decl. ¶ 15, Ex. M; Blakemore Decl. ¶ 26; Weintraub Decl. ¶ 14; AMPI Ex. B. Revised Outcome 7.2 mandates that "[s]tudents with moderate to severe disabilities at co-located schools shall participate with their nondisabled peers in general education classes an average of 12% of the

[1] "The term 'special education center' is a term used by the LAUSD to describe a school campus where all or nearly all of the students served are disabled, and where there is limited, if any, interaction between disabled students and their non-disabled peers." Howell Decl. ¶ 7.

instructional day and during lunch, breaks/recess and school-wide activities."[2] Id. The terms of this stipulated agreement were set forth in the Independent Monitor's October 24, 2012 Annual Report. Cox Decl. ¶ 15, Ex. L.

On October 15, 2013, the April Munoz Proposed Intervenors filed their Motion to Intervene [285]. On October 23, 2013, the Mina Lee Proposed Intervenors filed their Motion to Intervene and for Order to Show Cause Why Defendants Should not be Sanctioned [300].

---

[2] Revised Outcome 7 reads:

The parties hereby stipulate to replacing Outcome 7A and Outcome 7B of the MCD . . . with the following two mutually exclusive parts which shall be met separately:
1. Reduce the number of students with moderate to severe disabilities ages 6-18 at special education centers by a total of 33% over three years, beginning with the 2012-2013 school year. In order for students at co-located schools to count toward achieving this reduction, the percentage of students with disabilities at the co-located school shall not exceed 28% of the school population. The number of general education students used in this calculation shall not be less than the number reflected in California Longitudinal Pupil Achievement Data System (CALPADS) during the initial year in which the co-location of the designated school occurs; however, for students to count at a co-located school, the number of special education students shall not exceed 35% of the population.
2. Students with moderate to severe disabilities at co-located schools shall participate with their nondisabled peers in general education classes an average of 12% of the instructional day and during lunch, breaks/recess and school-wide activities.

Cox Decl. Ex. M; AMPI Ex. B.

## II. Legal Standard

**A. <u>Motion to Intervene: Intervention as of Right</u>**

Intervention is a procedure in which a nonparty to a lawsuit can gain party status without the consent of the original parties. <u>United States ex rel. Eisenstein v. City of New York</u>, 556 U.S. 928, 933 (2009) (citing <u>Marino v. Ortiz</u>, 484 U.S. 301, 304 (1988)). If allowed to intervene, "intervening parties have full party status in the litigation." <u>United States v. Cal. Mobile Park Mgmt. Co.</u>, 107 F.3d 1374 (9th Cir. 1997). "Intervention after entry of a consent decree is reserved for exceptional cases." <u>Alaniz v. Tillie Lewis Foods</u>, 572 F.2d 657, 659 (9th Cir. 1978) (citing <u>United States v. Blue Chip Stamp Co.</u>, 272 F. Supp. 432, 435-38 (C.D. Cal. 1967)).

Federal Rule of Civil Procedure 24(a) states in relevant part that:

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

As a general matter, the requirements for intervention as of right under Rule 24(a)(2) are as follows:

> (1) [T]he [applicant's] motion must be timely; (2) the applicant must have a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

Freedom from Religion Found., Inc. v. Geithner, 644 F.3d 836, 841 (9th Cir. 2011) (quoting California ex rel. Lockyer v. United States, 450 F.3d 436, 440 (9th Cir. 2006)).

The Rule is construed "broadly in favor of proposed intervenors." Wilderness Soc'y v. United States Forest Serv., 630 F.3d 1173, 1179 (9th Cir. 2011). However, "[f]ailure to satisfy any one of the requirements is fatal to the application, and [the Court] need not reach the remaining elements if one of the elements is not satisfied." Perry v. Proposition 8 Official Proponents, 587 F.3d 947, 950 (9th Cir. 2009).

**B. Motion to Intervene: Permissive Intervention**

Intervention may be allowed in the Court's discretion when: (1) a federal statute confers a conditional right to intervene; or (2) the applicant's claim or defense shares a common question of law or fact with the main action. Fed. R. Civ. P. 24(b)(1).

"Generally, permissive intervention under Rule 24(b) requires '(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." Blum v. Merrill Lynch Pierce Fenner & Smith Inc., 712 F.3d 1349, 1353 (9th Cir. 2013) (quoting Beckman Indus., Inc. v. Int'l Ins. Co., 966 F.2d 470, 473 (9th Cir. 1992)). Furthermore, "in exercising its discretion, the Court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

District courts are given broad discretion in determining whether to allow permissive intervention. Perry v. Schwarzenegger, 630 F.3d 898, 905-06 (9th Cir. 2011) (citing Kootenai Tribe v. Veneman, 313 F.3d 1094, 1110 (9th Cir. 2002)).

## III. Discussion

### A. Intervention as of Right: Rule 24(a)(2)

Both the MLPI and the AMPI seek intervention as of right pursuant to Fed. R. Civ. P. 24(a)(2). See MLPI Mot. 33:13-23; AMPI Mot. 12:11-13:6. Rule 24(a)(2) requires the Court, on a timely motion, to permit intervention to anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless

existing parties adequately represent that interest."

The Ninth Circuit has construed Rule 24(a)(2) to require: (1) that the applicant's motion be timely; (2) that the applicant "have a 'significantly protectable' interest relating to the property or transaction which is the subject of the action;" (3) that the applicant be "so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest;" and (4) that the applicant's interest be inadequately represented by the parties to the action. Freedom from Religion Found., Inc., 644 F.3d at 841.

The applicant bears the burden of showing that each element is met. Citizens for Balanced Use v. Montana Wilderness Ass'n, 647 F.3d 893, 897 (9th Cir. 2011) (citing Prete v. Bradbury, 438 F.3d 949, 954 (9th Cir. 2006)). Furthermore, the "[f]ailure to satisfy any one of the requirements is fatal to the application, and [the Court] need not reach the remaining elements if one of the elements is not satisfied." Perry, 587 F.3d at 950. Rule 24 is, however, construed "broadly in favor of proposed intervenors." Wilderness Soc'y v. United States Forest Serv., 630 F.3d 1173, 1179 (9th Cir. 2011).

1. Timeliness

"Timeliness is the threshold requirement for intervention." United States v. Oregon, 913 F.2d 576, 588 (9th Cir. 1990) (citing NAACP v. New York, 413 U.S.

345, 366 (1973)). In determining whether a motion to intervene is timely, the Ninth Circuit considers three factors: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." League of Latin Am. Citizens v. Wilson, 131 F.3d 1297, 1302 (9th Cir. 1997) (quoting Cnty. of Orange v. Air California, 799 F.2d 535, 537 (9th Cir. 1986)); United States ex rel. McGough v. Covington Tech. Co., 967 F.2d 1391, 1394 (9th Cir. 1992).

"The crucial date for assessing the timeliness of a motion to intervene is when proposed intervenors should have been aware that their interests would not be adequately protected by the existing parties." Smith v. Marsh, 194 F.3d 1045, 1052 (9th Cir. 1999) (citing League of Latin Am. Citizens, 131 F.3d at 1304). In other words, a party seeking to intervene must act "as soon as he knows or has reason to know that his interests might be adversely affected by the outcome of the litigation." California Dep't of Toxic Substances Control v. Commercial Reatly Projects, 309 F.3d 1113, 1120 (9th Cir. 2002) (quoting United States v. Oregon, 913 F.2d at 589). Ultimately, however, "[t]imeliness is to be determined from all the circumstances." NAACP v. New York, 413 U.S. at 366.

a. *Stage of the Proceeding*

In determining whether the "stage of the proceeding" factor supports a finding of timeliness,

courts should consider not only what has yet to occur, but also what has already occurred. See League of Latin Am. Citizens, 131 F.3d at 1303. Indeed, if a court has already substantially engaged with the issues in a case, this factor weighs heavily against allowing intervention as of right. Smith v. Marsh, 194 F.3d at 1051 (9th Cir. 1999) (quoting League of Latin Am. Citizens, 131 F.3d at 1303).

Movants seek to intervene in this action twenty years after it was initially filed [1], seventeen years after the original Consent Decree was entered [84], and ten years after the adoption of the MCD [265, 266].

The Court should find that the current stage of the proceedings is advanced and thus weighs heavily against a finding of timeliness. Other courts have found that this factor weighed against a finding of timeliness where the proposed intervenors delayed intervening for much less time than the Movants here. For example, the Ninth Circuit in Alaniz v. Tillie Lewis Foods, 572 F.2d 657, 658-59 (9th Cir. 1978), found that the stage of the proceedings factor weighed heavily against proposed intervenors where they sought to intervene 17 days after a consent decree had become effective. Similarly, in County of Orange, 799 F.2d at 538, the court found that the stage of proceedings factor weighed against intervention where the motion was filed after the parties had reached an agreement following five years of litigation.

In this case, the Movants seek to intervene much later than the proposed intervenors in both Alaniz and County of Orange. Movants do not seek to intervene just 17 days after entry of the MCD - they seek to intervene 10 *years* after entry of the MCD. Movants seek to intervene at an extremely advanced stage of the proceedings. As such, the Court finds that this factor weighs heavily against a finding of timeliness.

The AMPI argue, however, that this case has entered a new stage due to changed circumstances because of the adoption of Revised Outcome 7. AMPI Reply 15:19-16:5.

A change in circumstances may give rise to a new stage, which may favor allowing intervention. See United States v. State of Oregon, 745 F.2d 550, 552 (9th Cir. 1984). Such a change in circumstances may be the Parties' stated intent to modify a court approved plan. See id.; San Francisco NAACP v. San Francisco Unified Sch. Dist., Case No. C-78-1445 WHO, 1993 WL 299365, at *3 (N.D. Cal. July 22, 1993).

Even so, modification of a consent decree does not, *ipso facto*, mean that a change in circumstances has occurred. See Delaware Valley Citizens' Council for Clean Air v. Commonwealth of Pennsylvania, 674 F.2d 970, 974-75 (3d Cir. 1982) (finding no extraordinary circumstances sufficient to overcome presumption against intervention where appellants filed motions to intervene 45 days after the first modification of consent decree). Such is the case here, where Revised

Outcome 7 appears to be just another modification to the MCD aimed at further integration and inclusion of students with disabilities. As such, the Court finds that this factor weighs against a finding of timeliness.

b. *Prejudice to Other Parties*

"One of the most important factors in determining timeliness is prejudice to the existing parties." United States v. Oregon, 913 F.2d at 588 (internal quotation marks omitted). Prejudice may be found where intervention would prolong the litigation, threaten the Parties' settlement, or upset a delicate balance achieved after years of litigation. See California Dep't of Toxic Substances, 309 F.3d at 1119 (citing United States v. Washington, 86 F.3d 1499, 1504 (9th Cir. 1996); United States v. Oregon, 913 F.2d at 588-89; Cnty. of Orange, 799 F.2d at 538).

In the instant case, allowing the Movants to intervene would seriously prejudice the Parties. Movants seek to intervene when 16 of 18 measurable outcomes set forth in the MCD have been met. Weintraub Decl. ¶ 17; Blakemore Decl. ¶ 30; Havens Decl. Ex. G; Myers Decl. ¶ 16; Cox Decl. ¶ 17. Movants seek to intervene when the Independent Monitor estimates that the MCD can be terminated in the next two years. Weintraub Decl. ¶ 21; see also Havens Decl. Ex. G. Allowing Movants to intervene would prolong the litigation, jeopardizing an already long and exhaustive

process.

Moreover, Movants seek to intervene when the LAUSD has already begun efforts to co-locate special education centers with general education campuses to provide for integration. See Howell Decl. ¶¶ 14, 21; Klosterman Decl. ¶¶ 8-9. In fact, the LAUSD has undertaken significant efforts and expended substantial resources in furtherance of this initiative to ensure that all necessary supports and services will be provided for all students in accord with their IEPs. See Howell Decl. at ¶ 21; Klosterman Decl. ¶ 8; Jarrett Decl. ¶¶ 5-11, 13-15; Rubenacker Decl. ¶¶ 3-4. Furthermore, if this Court were to allow Movants to intervene and to grant their requested relief, the hundreds of students now being served at comprehensive school sites may be moved back to special education centers. Howell Decl. ¶ 14; Klosterman Decl. ¶ 9. Such a result would threaten the Parties' settlement by overriding their expectations and preparations in implementing Revised Outcome 7. Furthermore, it would particularly prejudice the LAUSD by requiring the LAUSD to expend further resources in resetting the status quo.

Finally, the Court should find that allowing Movants to intervene would upset the delicate balance the Parties and the Independent Monitor have sought and achieved through careful negotiation and research. The Parties negotiated Revised Outcome 7 over a year long

period. In October 2011, the LAUSD met with the Independent Monitor and Plaintiff's Counsel to discuss the possibility of revising Outcome 7 to address problems the Independent Monitor identified with Outcomes 7A and 7B. Weintraub Decl. ¶ 13; Blakemore Decl. ¶ 23; Myers Decl. ¶ 18; Cox Decl. ¶¶ 12-13. Notably, prior to the October 2011 meeting, the Office of the Independent Monitor had already prepared discussion papers regarding Outcome 7 and problems the LAUSD faced in meeting the Outcome. See Myers Decl. ¶ 18, Exs. E-F; Cox. Decl. ¶ 12, Exs. I-J; Blakemore Decl. ¶ 23. Following that meeting, the Independent Monitor retained Dr. David Rostetter, an expert on LRE, to advise the Parties and the Independent Monitor on solutions to the Outcome 7 problems. Weintraub Decl. ¶ 13; Cox. Decl. ¶ 13; Myers Decl. ¶¶ 20-21; Blakemore Decl. ¶ 24. Negotiations over modifications to Outcomes 7A and 7B continued from February 2012, when the LAUSD presented an initial version of the proposed Outcome, to September 2012, when the Parties reached a stipulated agreement endorsed by the Independent Monitor. Blakemore Decl. ¶ 25; Myers Decl. ¶ 22; Cox Decl. ¶ 15; Weintraub Decl. ¶ 13. The Parties and the Independent Monitor have painstakingly negotiated an agreement. They have conducted considerable research and weighed their options in reaching this agreement. In short, the Court finds that in negotiating Revised Outcome 7, the Parties' discussions achieved a delicate

balance. Furthermore, the Court finds that allowing Movants to intervene at this time would endanger that balance.

In short, Movants seek to intervene at a crucial time in the Parties' implementation of the MCD. Allowing their intervention would prolong the litigation, threaten the Parties' settlement, and upset the delicate balance reached by the Parties' negotiations. As a result, the Court finds that the Parties would be substantially prejudiced by allowing intervention. Accordingly, the Court finds that this factor weighs heavily against timeliness.

c. *Reason for and Length of Delay*

While "the length of the delay" in filing a motion to intervene "is not determinative, any substantial lapse of time weighs heavily against intervention." United States v. Washington, 86 F.3d at 1503 (citing Officers for Justice v. Civil Serv. Comm'n of San Francisco, 934 F.2d 1092, 1095 (9th Cir. 1991)). A lengthy delay, however, is not as damaging as a failure to adequately explain the reason for the delay. See League of United Latin American Citizens, 131 F.3d at 1304; Smith v. Marsh, 194 F.3d at 1052. "The crucial date for assessing the timeliness of a motion to intervene is when proposed intervenors should have been aware that their interests would not be adequately protected by the existing parties." Smith v. Marsh, 194 F.3d at 1052 (9th Cir. 1999) (citing League of

Latin Am. Citizens, 131 F.3d at 1304). Even when an applicant is uncertain that a settlement or consent decree is adverse to their interests, if the applicant has reason to know that the negotiations might produce a settlement or decree to its detriment, that knowledge or suspicion will trigger the applicant's obligation to seek intervention. See California Dep't of Toxic Substances Control, 309 F.3d at 1120.

Movants seek to intervene in this action twenty years after it was initially filed [1], seventeen years after the original Consent Decree was entered [84], and ten years after the Consent Decree was modified [265, 266]. In addition, Movants seek to intervene five years after an earlier modification of Outcome 7 (see Cox Decl. ¶¶ 7, 8; Hehir Decl. ¶ 20; Blakemore Decl. ¶ 21; Weintraub Decl. ¶ 8), and one year after the Parties and Independent Monitor agreed to Revised Outcome 7 (see Weintraub Decl. ¶ 13; Cox Decl. ¶ 13-15; Myers Decl. ¶ 22; Blakemore Decl. ¶¶ 24-25).

The Court notes that the inclusion of special education students into the general education program has been a primary issue from the beginning of the case. Hehir Decl. ¶¶ 14-15; Ammons Decl. ¶¶ 5, 13; Blakemore Decl. ¶ 7; Cox Decl. ¶ 5. The Court also notes that Counsel for the MLPI appear to have attempted to intervene in this Action in 2002 by serving, but not filing, a motion to intervene. See Myers Decl. ¶ 9, Exs. A-C; Blakemore Decl. ¶ 10; Ammons

Decl. ¶ 8. Furthermore, the Independent Monitor’s October 5, 2011 Annual Report concluded that Outcome 7B could not be achieved without the arbitrary transfer of a significant number of students from special education centers to general education campuses. Weintraub Decl. ¶ 12; Cox Decl. ¶¶ 10-11, Ex. H. The Independent Monitor’s October 5, 2011 Annual Report also discussed the LAUSD’s planned integration of students in certain eligibility categories in attendance at special education centers. Cox Decl. ¶ 11, Ex. H. The Parties’ agreement to Revised Outcome 7 was no bolt from the blue. Movants arguably have been on notice from the very inception of this litigation that their interest in maintaining the LAUSD’s initial system of special education centers may be impaired by the Parties’ negotiations.

But even if this Court were to assume, *arguendo*, that these past events did *not* put Movants on notice, Movants certainly were put on notice by the Independent Monitor’s public and televised annual hearing on April 11, 2013. See Cox Decl. ¶ 19; Ammons Decl. ¶ 12. Movants appear to agree. The MLPI concede that they became aware that their interests may be impaired “at the earliest, May or June, 2013.” MLPI Mot. 14:15-16. The AMPI appear to have known that their interests may have been impaired by May 2013. See Dkt. # 287 p.3-4, Munoz Decl.

Both groups of intervenors provide identical

reasons for their delay. In particular, Movants aver that they filed the instant Motions only after learning that Plaintiffs' Counsel would not represent them in opposing Revised Outcome 7 (see MLPI Mot. 14:16-24; AMPI Mot. 35:4-5), after trying to meet with LAUSD representatives (see MLPI Mot. 14:16-17), and after waiting for the Independent Monitor to act (see MLPI Mot. 14:17-18; AMPI Mot. 35:6). On August 5, 2013, MLPI's Counsel, Stephen Maseda, AMPI's Counsel, Seymour Amster, and one of the Movants, April Munoz, met with Plaintiffs' Counsel. See Maseda Decl. ¶ 13; Ammons Decl. ¶ 16; Dkt. #287 p.17, Munoz Decl.; Blakemore Decl. ¶ 33. Movants claim that it was not until after this meeting that Movants discovered that their interests were not being adequately represented. MLPI Mot. 14:21-24; 35:4-10. Movants' arguments could constitute a proper explanation for their delay - at least until August 5, 2013. See Smith v. Marsh, 194 F.3d at 1052 (accepting proposed intervenors' contention that they could only determine their interests were inadequately represented after closely reviewing briefs filed and order issued on motion for summary judgment as a proper explanation for delay).

However, even if this Court were to accept, *arguendo*, not only Movants' date of August 5, 2013 as the point at which they discovered that their interests would not be adequately represented by the Parties, but also that this constituted a proper excuse, the Court

would still find that Movants have failed to provide an adequate reason for their delay between August 5, 2013 and the filing of their Motions. The AMPI and MLPI filed their Motions on October 15, 2013 [285] and October 23, 2013 [300], respectively. In other words, even after the Movants conclusively determined that their interests were not being adequately represented by the existing Parties, they still delayed by 71 and 79 days, respectively, in filing their Motions.

A four month delay without explanation has been found to be sufficient to deny a motion to intervene. See Key Bank of Puget Sound v. Alaskan Harvester, 738 F. Supp. 398, 405 (W.D. Wash. 1989). Similarly a five month delay without acceptable explanation has been found to support a finding of untimeliness. See Consolidated Edison Co. of New York, Inc. v. Breznay, 683 F. Supp. 832, 836 (D.D.C. 1987). This Court sees no reason why Movants' two and a half month delay without explanation should not also weigh against timeliness.

d. *Conclusion*

The Court finds that because all three factors weigh against a finding of timeliness, Movants did not timely file their Motions to Intervene. As a result, the Court need not reach the remaining issues. See United States v. Oregon, 913 F.2d at 588 ("Timeliness is the threshold requirement for intervention"). However, even assuming, *arguendo*, that Movants' Motions

were timely, this Court would still deny their Motions to intervene as of right.

2. Significantly Protectable Interest and Whether Disposition Will Impair Movants' Ability to Protect Their Interest

Movants contend that they have a significantly protectable interest in this case - namely, Movants contend that they have an interest in their child's education. See AMPI Mot. 36:10-26; MLPI Mot. 15:2-8 (citing Atkins v. State Bd. of Educ., 418 F.2d 874, 876 (4th Cir. 1969); Johnson v. San Francisco Unified Sch. Dist., 500 F.2d 349, 353 (9th Cir. 1974)). Movants also contend that they have a significant interest in ensuring that the MCD is adhered to by the Parties. MLPI Mot. 15:1-2. Alternatively, Movants argue that they have an interest in "insuring [sic] that they receive a Free Appropriate Public School Education [sic]." AMPI Mot. 36:10-13; MLPI Reply 11:3-8.

Both Plaintiffs and the LAUSD assert that Movants do not have a protectable interest in the litigation because: (1) special education center placement remains available to students who require such placement, and (2) parents who disagree with their child's IEP assessment may pursue administrative due process to challenge placement. Pl. Opp'n 22:9-20; LAUSD Opp'n 20:25-21:9.

In determining "whether putative intervenors demonstrate the 'significantly protectable' interest

necessary for intervention of right . . . the operative inquiry should be whether 'the interest is protectable under some law' and whether 'there is a relationship between the legally protected interest and the claims at issue.'" Wilderness Soc'y v. U.S. Forest Serv., 630 F.3d 1173, 1180 (9th Cir. 2011) (quoting Sierra Club v. U.S. E.P.A., 995 F.2d 1478, 1484 (9th Cir. 1993); Donnelly v. Glickman, 159 F.3d 405, 409 (9th Cir. 1998) (citing Northwest Forest Resource Council v. Glickman, 82 F.3d 825, 837 (9th Cir. 1996)). Generally speaking, an applicant "has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation." California ex rel. Lockyer v. United States, 450 F.3d 436, 441 (9th Cir. 2006).

To the extent that Movants claim that they are being deprived a free appropriate public education ("FAPE") in conformity with their IEPs, this Court finds that this is a legally cognizable and protectable interest. In general, under the IDEA and California law, children with disabilities have a right to a FAPE. See 20 U.S.C. § 1412(a)(1)(A); Cal. Ed. Code § 56000 et seq. A FAPE consists of special education and related services that are provided at public expense and under public supervision and direction, meet the State's educational standards, and conform to the student's IEP. See 20 U.S.C. § 1401(9); Cal. Code Regs., tit. 5, §3001(p). As such, the Court finds that the Movants

satisfy the second element for intervention as of right.

However, it should be unclear to this Court precisely how this interest is affected by the Parties' adoption of Revised Outcome 7. Movants contend that the adoption of Revised Outcome 7, in and of itself, has caused the LAUSD to subvert the IEP system and to systematically dismantle the LAUSD's special education centers.[3] See MLPI Mot. 7:18-8:15; AMPI Mot. 19:-16. Yet, Movants fail to explain how or why the Parties'

---

[3] The Court notes that the document the MLPI rely upon to show that LAUSD policy only permits general education placement actually specifically provides for four separate placement options, including those in a "Non-General Education Setting" and "In [a] Home, Hospital, or Residential Care Facility." Maseda Decl. Ex. D. Although the policy provides that "All discussions regarding educational placement must begin with the school of residence and the general education classroom the student would attend based on their age," it specifically includes options for alternative, and more restrictive, placement options if that initial placement recommendation is "supported with specific student data." Id. Furthermore, while the policy does not specifically provide for special education centers as an option, such an option is specifically contemplated when IEP teams consider a "Non-General Education Setting." Id.; see also Howell Decl. ¶ 18. IEP teams are merely instructed to "consider whether all appropriate supplementary aids and services have been considered in the *public school setting* prior to recommending alternative placements." Id. (emphasis added). The Court struggles to comprehend how the MLPI read this single policy paper as standing for the proposition that the LAUSD has categorically forbidden all special education center placement.

adoption of Revised Outcome 7 categorically forecloses special education centers as a placement option or inherently subverts the IEP assessment process. Since the time the Parties agreed to Revised Outcome 7, no special education center has closed. See Howell Decl. ¶ 9; see also MLPI Mot. 9:14-20 ("[LAUSD] has merged three of the four co-located special school campuses"). As before, the LAUSD continues to make placement decisions through the individualized IEP process. See Howell Decl. ¶ 9, 15; Cox Decl. ¶ 16. In fact, it appears that "166 student IEP teams have recommended placement in a special education center as the [LAUSD's] offer of a free appropriate public education" since the implementation of Revised Outcome 7. Howell Decl. ¶ 19.

In short, the Court finds that the Movants will not suffer a practical impairment of their interest in receiving a FAPE in accordance with their IEPs because the adoption of Revised Outcome 7 does not deprive Movants of special education centers as a placement option or violate the IEP assessment process.

Movants also contend that disposition of this Action will impair or impede their ability to protect their interest because the MCD precludes the filing of other class actions. AMPI Mot. 37:23-38:4; MLPI Mot. 15:12-15; AMPI Reply 13:18-14:26. Plaintiffs respond by asserting that parents who disagree with their child's placement may pursue administrative due process

to challenge that placement. Pl. Opp'n 16:13-17:8; 22:17-20. The LAUSD echoes Plaintiffs' response. See LAUSD Opp'n 21:15-22:1.

The Court agrees with Plaintiffs and the LAUSD. "Even if this lawsuit would *affect* the proposed intervenors' interests, their interests might not be *impaired* if they have 'other means' to protect them." California ex rel. Lockyer, 450 F.3d at 442 (quoting United States v. Alisal Water Corp., 370 F.3d 915, 921 (9th Cir. 2004)). In Alisal Water Corp., the Ninth Circuit found that litigation would not impair the proposed intervenors' interests because there was a separate process in place for addressing claims adequate to protect the intervenors' interest. Alisal Water Corp., 370 F.3d at 921. Such is the case here. Specifically, IDEA provides for the filing and adjudication of a due process complaint for parents who disagree with their child's IEP. See 20 U.S.C. § 1415; Cal. Ed. Code § 56501; Howell Decl. ¶ 20; Dkt. #266 ¶ 93(b). Indeed, the Court finds that the specific complaints brought by Movants' declarants, given their individualized and fact-intensive nature, are best suited to the due process system. For example, declarants contend that students are not properly supervised (see Dkt. #287 p.38-39, Hernandez Decl.; p.29-30, Pineda Decl.; Aida Flores Decl. ¶ 6), that instructional services are inadequate (see Dkt. #287 p.27-28, Munoz Decl.), that nurses are not directly

accessible (Dkt. #287 p.17-18, Munoz Decl.; p.39, Hernandez Decl.), and of procedural irregularities by LAUSD staff in conducting IEP assessment meetings (see Dkt. #287 p.44-45, Ayapana Decl.; Lee Decl. ¶ 6; Julia Flores Decl. ¶ 16; Chamu Decl. ¶ 4). The Movants' own declarations appear to prefer individualized due process hearings over a decree from this Court. See Julia Flores Decl. ¶ 16 ("I do not understand how, or why, the Court would order a change in my son's IEP or his placement or instructional setting when the Court knows nothing about my son, his disabilities, or his educational or safety needs").

Given that Movants have a viable alternative avenue for addressing their concerns regarding the placement, program, and services offered to individual students by LAUSD, this Court finds that disposition of this lawsuit will not practically impair Movants' interests. The Court also notes that IDEA requires complainants to exhaust administrative remedies prior to bringing a civil action seeking relief available under the IDEA. Payne v. Peninsula Sch. Dist., 653 F.3d 863, 875 (9th Cir. 2011). Such would likely be the case here.

As such, this Court holds that Movants have failed to meet the third requirement for intervention as of right.

3. Conclusion

Because Movants did not timely file their Motions to Intervene, and because Movants have not shown that

their interests will be practically impaired by the disposition of this Action, the Court holds that Movants cannot intervene as of right under Rule 24(a)(2). Because Movants are unable to establish either the first or third elements for intervention as of right, this Court need not address the fourth element for intervention as of right. Accordingly, this Court **DENIES** Movants' requests to intervene as of right.

**B. Permissive Intervention: Rule 24(b)**

Alternatively, Movants move for permissive intervention under Rule 24(b). See MLPI Mot. 16:22-24; AMPI Mot. 41:4-6.

Under Rule 24(b), "[on] timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). The Ninth Circuit has clarified that "permissive intervention 'requires (1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action.'" Freedom from Religion Found. v. Geithner, 644 F.3d 836, 843 (9th Cir. 2011) (quoting Beckman Indus., Inc. v. Int'l Ins. Co., 966 F.2d 470, 473 (9th Cir. 1992)). "Even if an applicant satisfies those threshold requirements, the district court has discretion to deny permissive intervention." Donnelly, 159 F.3d at 412 (citing Cnty. of Orange, 799

F.2d at 539; Spangler v. Pasadena Bd. of Educ., 552 F.2d 1326, 1329 (9th Cir. 1977)). In exercising its discretion in allowing permissive intervention, the Court should consider: (1) "whether the intervention will 'unduly delay or prejudice the adjudication of the rights of the original parties,'" (2) whether the "movant's 'interests are adequately represented by existing parties,' and (3) "judicial economy." Vanegas v. Skaggs, 867 F.2d 527, 530-31 (9th Cir. 1989).

No party addresses whether there is an independent ground for jurisdiction. In order for Movants to permissively intervene, it appears, parties must specifically assert an independent basis for jurisdiction. See E.E.O.C. v. Pan Am. World Airways, Inc., 897 F.2d 1499, 1509-10 (9th Cir. 1990); Northwest Forst Resource Council v. Glickman, 82 F.2d 825, 839 (9th Cir. 1996) ("In this case, [proposed intervenor] fails to satisfy the first prong of the permissive intervention standard, since it asserts no independent basis for jurisdiction"). Moreover, as discussed above, Movants' Motions are untimely. And, as described, *supra*, Movants' declarations are rife with individualized factual allegations not otherwise common to the Action. In other words, this Court finds that Movants do not satisfy the requirements for permissive intervention.

Even assuming, however, that Movants did satisfy the elements for permissive intervention, this Court

would still exercise its discretion to deny Movants' request to permissively intervene.

As discussed, *supra*, allowing Movants to intervene would cause severe prejudice to the existing Parties. Allowing Movants to intervene would prolong the litigation, threaten the Parties' settlement, and upset the delicate balance reached by the Parties and the Independent Monitor.

Furthermore, the Court finds that allowing Movants to intervene would not be in the interests of judicial economy. Allowing intervention would open the floodgates to additional proposed intervenors to litigate their individualized complaints regarding the LAUSD's administration of its special education system. Such a result is anathema to the due process system created by IDEA.

Accordingly, this Court **DENIES** Movants' request to permissively intervene.

**C. Request for Civil Contempt**

The MLPI include in their Motion a request to hold Plaintiffs' Counsel and the LAUSD in contempt for an alleged violation of the MCD. MLPI Mot. 17:6-9.

"Civil contempt in this context consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." In re Dual-Deck Video Cassette Recorder Antitrust Litig., 10 F.3d 693, 695 (9th Cir. 1993). "The contempt 'need not be willful,'"

but "a person should not be held in contempt if his action 'appears to be based on a good faith and reasonable interpretation of the court's order.'" Reno Air Ass'n v. McCord, 452 F.3d 1126, 1130 (9th Cir. 2006) (quoting id.); see also Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc., 689 F.2d 885, 891 (9th Cir. 1982). In other words, "substantial compliance with the terms of a consent judgment is a valid defense to . . . a finding of civil contempt." Vertex, 689 F.2d at 891 (citing United States v. Baker, 641 F.2d 1311, 1317 (9th Cir. 1981); U.S. Steel Corp. v. UMW, 598 F.2d 363, 368 (5th Cir. 1979)).

"The party alleging civil contempt must demonstrate that the alleged contemnor violated the court's order by 'clear and convincing evidence,' not merely a preponderance of the evidence." Dual-Deck Video, 10 F.3d at 695 (quoting Vertex, 689 F.2d at 889).

The MLPI argue that the Parties violated the MCD by improperly modifying the MCD. MLPI Mot. 18:8-14. The Parties both contend the adoption of Revised Outcome 7 was either fully or substantially consistent with modification procedures prescribed by the MCD. Pl. Opp'n 24:2-25:2; LAUSD Opp'n 24:14-25:23.

Under MCD ¶ 85, if the Independent Monitor is notified by either party "of the amendment or repeal of any law or regulation upon which any outcome or obligation set forth in this Modified Consent Decree is based," the Independent Monitor must consider the

extent to which any outcome or obligation should be modified. Dkt. #266 ¶ 85. If the Independent Monitor determines that any outcome or obligation should be modified, the Independent Monitor must notify the Parties of this determination in writing. Id.

Consistent with this provision, in October 2011, the LAUSD met with Plaintiffs' Counsel and the Independent Monitor to discuss challenges associated with Outcome 7. Weintraub Decl. ¶ 13; Myers Decl. ¶ 18; Blakemore Decl. ¶ 23; Cox Decl. ¶ 12. Specifically, the stipulation setting forth Revised Outcome 7 clearly states that the Parties and the Independent Monitor "have met and conferred over the impact of *laws, regulations, and court decisions* on certain outcomes set forth in the MCD." Cox Decl. Ex. M; AMPI Ex. B. The Independent Monitor thereupon determined that Outcomes 7A and 7B should be revised to address these problems. Id. Ultimately, the Independent Monitor approved the Parties' proposed revision - Revised Outcome 7. Weintraub Decl. ¶ 13; Cox Decl. ¶ 13-15; Myers Decl. ¶ 22; Blakemore Decl. ¶¶ 24-25. The Court finds that the Parties' and the Independent Monitor's conduct was largely in line with the process prescribed by MCD ¶ 85.

Additionally, under MCD ¶ 67, the Independent Monitor was authorized to increase an Outcome measure to take into account any delay caused by the LAUSD's inability to meet that Outcome by the June 30, 2006

deadline. Dkt. #266 ¶ 67. As Outcome 7 was not met by June 30, 2006 (see Cox Decl. ¶ 7, Exs. B-C; Hehir Decl. ¶¶ 20, 22; Blakemore Decl. ¶ 21; see also Weintraub Decl. ¶ 7), the Independent Monitor was authorized under ¶ 67 to change the Outcome measure. The Independent Monitor did so, after being presented with the Parties' negotiated agreement. Weintraub Decl. ¶ 13; Cox Decl. ¶ 13-15; Myers Decl. ¶ 22; Blakemore Decl. ¶¶ 24-25. As such, the Court finds that the Parties' and the Independent Monitor's conduct was in line with the modification procedures prescribed by MCD ¶ 67.

Finally, the Court finds that the process by which the Parties reached Revised Outcome 7 was in the spirit of the MCD. MCD ¶ 86 provides for informal resolution between the Parties where the LAUSD seeks to modify certain continuing commitments related to its implementation of the MCD's Outcomes. Dkt. # 266 ¶¶ 82, 86(a). Under that procedure, if the LAUSD seeks to modify such a continuing commitment, it must first notify Plaintiffs' Counsel of its intent to modify one of its continuing commitments and then meet and confer with Plaintiffs' counsel to resolve the issue by mutual agreement. Dkt. # 266 ¶ 86(a). In other words, the MCD anticipates situations where the Parties may resolve conflicts in the implementation of the MCD's Outcomes via mutual agreement. Such was the case here, where not only the Parties, but also the Independent

Monitor, thoughtfully, carefully, and thoroughly negotiated Revised Outcome 7.

In sum, the Court finds that the Parties and the Independent Monitor acted based upon a good faith, reasonable interpretation of the MCD. Their reading of the MCD was consistent with the wording and spirit of the MCD. The Parties have shown more than substantial compliance with the MCD; correspondingly, the MLPI have utterly failed to show, much less by clear and convincing evidence, that the Parties and Independent Monitor have violated the terms of the MCD. As such, the Court **DENIES** the MLPI's request to hold the Parties in civil contempt.

**D. <u>Applications for Appointment as Guardian ad Litem</u>**

In conjunction with their Motion, the AMPI also filed five Applications for Appointment as Guardians ad Litem [291-295]. As this Court has denied Movants' Motions to Intervene [285, 300], this Court **DENIES** Movants' Applications for Appointment as Guardians ad Litem as **MOOT**.

## IV. Conclusion

For the foregoing reasons, the Court hereby **DENIES** Movants' Motions to Intervene [285, 300]. Moreover, this Court **DENIES** the MLPI's request to hold the Parties in civil contempt. Finally, the Court **DENIES** Movants' Applications for Appointment as Guardians ad Litem as **MOOT**.

**IT IS SO ORDERED.**

DATED: January 16, 2014

RONALD S.W. LEW

**HONORABLE RONALD S.W. LEW**
Senior, U.S. District Court Judge